David M. "Bo" COLLINS, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Supreme Court of Tennessee.

July 16, 1973.

Don D. Greene, Morristown, for plaintiff in error.

David M. Pack, Atty. Gen of Tenn., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, for defendant in error.

## OPINION

JOHN W. WILSON, Special Justice.

For convenience, the parties will be designated as in the trial court; viz., the defendant in error, State of Tennessee, as State, and plaintiff in error, David M. "Bo" Collins, as defendant.

The defendant was tried and convicted upon a presentment returned by the Grand Jury of Hamblen County, Tennessee, charging that the defendant, David M. "Bo" Collins, did sell and possess with the intent to sell lysergic acid diethylamide, called LSD, which is a controlled substance, as described under the Tennessee Drug Control Act of 1971, Schedule I, as defined in T.C.A. § 52–1413(c)(9).

The jury found the defendant guilty as charged and fixed his punishment at ten years in the penitentiary and, thereafter, upon motion for new trial being overruled, the trial court sentenced the defendant to serve not less than five nor more than ten years in the State penitentiary. An appeal was prayed and granted to the Court of Criminal Appeals, which Court, with Judge Wayne Oliver dissenting, affirmed the trial court except as to assignment No. 6. As to this assignment, the judgment was affirmed, so far as guilt was concerned, but modified as to punishment, which the Court of Criminal Appeals fixed at not more than five years nor less than five years in the penitentiary. We granted certiorari and argument has been made before this Court.

The defendant relies upon the same assignments of error made in the Court of Criminal Appeals. The first assignment of error is, in substance, the evidence preponderates against the guilt of the defendant in favor of his innocence. The second, third and fifth assignments of error are the Court erred in refusing a motion for continuance. The fourth assignment of error complains that the plaintiff in error was denied a preliminary hearing which he was entitled to under T.C.A. § 40–1131. The seventh assignment of error complains the Judge declined to charge fully the defense of entrapment. The sixth assignment of error complains that the testimony of Dr. Blake was inadmissible and prejudiced the defendant by inflaming the jury. The eighth assignment is that the verdict and sentence is so excessive as to show passion and prejudice on the part of the jury.

Both the majority opinion and dissenting opinion agree that the testimony of Dr. Blake was incompetent. The majority opinion, written by the Honorable John D. Templeton, Special Judge, and concurred in by Judge Russell, holds that part of the testimony of Dr. Blake was harmless error and part of it was prejudicial, but went only to the question of punishment. The dissenting opinion holds the testimony of Dr. Blake was grossly prejudicial and that a new trial should have been granted.

We here copy the part of the majority opinion relating to the testimony of Dr. Blake as complained of in assignment No. 6, as follows:

"The sixth assignment of error complains that the testimony of Dr. Blake was inadmissible and prejudiced plaintiff in error by inflaming the jury. We think it was error to admit any of his testimony. Part of it did not prejudice plaintiff in error and part of it did.

In part of his testimony Dr. Blake purported to show that LSD has high potential for abuse and has no accepted medical use in the United States or lacks accepted safety for use in treatment under medical supervision. These are criteria to be used by the commissioner of mental health in placing a substance in Schedule I. T.C.A. 52–1412. The presentment recited that the substance referred to therein had these characteristics. But the substance sold was proved to be LSD and the law places it in Schedule I. The commissioner had no function to perform under T.C.A. 54–1412 [52–1412] and the allegation in the presentment was surplusage in this case. Dr. Blake's testimony was irrelevant and inadmissible on this point but it did not effect the outcome of the prosecution and the admission of it was harmless error.

Dr. Blake was permitted over objection to state the effects of LSD on the human body. His discourse was free-wheeling and covered medical literature on the subject together with his own conclusions. He spoke of two cases he had observed in the community where plaintiff in error was being tried. His description of the effects of LSD is laced with such expressions as 'the horrible effects of LSD', 'catastrophic thing about this drug', and 'devastating'. He said the drug caused loss of contact with reality, inability to communicate, violence, hallucinations, and brain damage. At one point he observed, 'I would regard a person under the influence of this drug as being extremely dangerous loose in society.' We think Dr. Blake's testimony on this subject was irrelevant and inadmissible.

The State suggests that if we find it was error to admit the testimony, which we have done, it was harmless error. We agree it had nothing to do with the determination of plaintiff in error's guilt. His guilt was made out by the other proof and there was very little proof that he was not guilty. But the testimony which was directed to punishment only was calculated to and no doubt did enhance the punishment. We are unable

to say the admission of it was harmless error.

Where the trial is error free so far as making out guilt is concerned and guilt is legally established prejudicial error effecting punishment alone is rendered harmless by reducing punishment to the minimum provided by law for the offense. McInturff v. State, 207 Tenn. 108, 338 S.W.2d 564 (1960); Vowell v. State, 207 Tenn. 598, 341 S.W.2d 735 (1960). Accordingly, the maximum term fixed by the jury and approved by the Judge for plaintiff in error to serve is modified to the minimum tern of five years."

From the dissenting opinion, written by the Honorable Wayne Oliver, we quote as follows:

"I agree that Dr. Blake's dissertation before the jury about the effects and evils of LSD was grossly prejudicial, and that admission of his testimony over objection was palpable error. I cannot agree that this testimony 'was directed to punishment only.' I find nothing whatever in this record so indicating, either directly or indirectly. We are not permitted to speculate or assume that the grossly prejudicial testimony influenced the jury only as to fixing punishment, and did not influence their decision as to built or innocence.

Nor can I assent to reduction of the punishment fixed by the jury in this case. This Court may reduce the punishment fixed by a jury only where it is necessary upon the record to reduce the offense to a lesser grade or degree, in which event this Court must fix the punishment at the minimum prescribed for the lesser crime, and then may do so only subject to the agreement of the State; and, absent such agreement, a new trial must be awarded. Cooper v. State, 210 Tenn. 63, 356 S.W.2d 405; Hunt v. State, 202 Tenn. 227, 303 S.W. 2d 740; Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738. Were the law oth-

erwise, and if this Court could alter at will the punishment fixed by the jury, there would scarcely be any defensible reason for vesting the jury with the responsibility of assessing punishment. T.C.A. §§ 40–2504, 40–2704 to 40–2707, 39–2406, 39–3702.

.    .    .    .    .    .

The law is settled that no prejudice or caprice on the part of the jury is shown simply by imposition of a sentence within the legal limits prescribed for the offense. Snowball v. State, Tenn.Crim. App., 477 S.W.2d 240; Pettyjohn v. State, Tenn.Crim.App., 463 S.W.2d 148; Dotson v. State, 2 Tenn.Crim.App. 388, 454 S.W.2d 174; Bailey v. State, Tenn. Crim.App., 479 S.W.2d 829; Hunter v. State, 222 Tenn. 672, 440 S.W.2d 1. Further, if the punishment assessed is within those limits, it does not violate constitutional prescriptions against cruel and unusual punishment. Thomas v. State, Tenn.Crim.App., 465 S.W.2d 887; Hardin v. State, 210 Tenn. 116, 355 S. W.2d 105. Such is the majority rule in other jurisdictions. Black v. United States, 269 F.2d 38 (9th Cir. 1959); 33 A.L.R.3d 335.

.    .    .    . It is well known that all earned time credits are deducted from the minimum sentence in establishing eligibility for parole. Thus, with maximum earned time credit a five-year sentence is served in three years and two months. So, as a practical matter nothing whatever is accomplished by reducing the sentence as the Court has done in this case from the ten years fixed by the jury to the minimum of five years fixed by statute. .    .    . "

A fair summary of the evidence in the instant case is found in the reply brief provided by the State, as follows:

"The first witness called by the State was the police chief of the city of Morristown. He testified substantially that one Bob Cameron was a member of the Morristown Police Department serving

in an undercover capacity at the time of the offense. He testified further that one Edward Allison was a drug user in the Morristown area, but had been utilized in the past as a paid informant for the police department. Unbeknownst to Allison, the police chief had requested his undercover agent, Cameron, to cultivate a friendship with Allison in order to provide himself with an entree into the 'drug culture' of the Morristown area.

Police Officer Cameron was called and testified that on the 18th of October, he purchased four pills which were purported to be Lysergic Acid Diethylamide (LSD) from the defendant. He testified that he had made the acquaintance of Allison, but that Allison did not know that he was an undercover agent. On the evening in question, when he arrived at Allison's trailer, the defendant was already there. During their conversation, the defendant told Cameron that he had four LSD tablets and would sell them for $10.00. Officer Cameron made the purchase at that time. During the conversation, Officer Cameron had explained that he intended to resell the tablets.

The defendant, testifying in his own behalf, testified that he was a user of drugs. On the evening before the date of the offense, the defendant was at a party at Allison's trailer. At that time, Allison had given him some pills, one of which he had taken. The other pills he had hidden outside of Allison's trailer. On the date of the offense, he was at the trailer when Cameron arrived. The defendant asserted that Cameron asked Allison for some pills, but Allison had none. Allison then directed the defendant to give to Cameron the pills which he had in his possession. According to the defendant, he was paid no money for these pills, and only delivered them to Cameron at the behest of Allison."

The testimony of Dr. Blake consists of 12 pages in the transcript and we will not burden this opinion with setting it out in full. We think the concise statement found in the second and third paragraph of the majority opinion, above quoted, fairly summarizes the testimony of Dr. Blake.

We agree with the majority opinion of the Court of Criminal Appeals that it was error to admit any of the testimony of Dr. Blake. We agree also that part of it was not prejudicial to defendant and part of it was prejudicial to the defendant. That part of the testimony of Dr. Blake as set out in the second paragraph of the above quoted portion of the majority opinion, with reference to LSD having no accepted medical use in the United States, and as to the criteria to be used by the Commissioner of Health, etc., was irrelevant and inadmissible, but was harmless error.

We agree with the majority opinion that the "free-wheeling" testimony of Dr. Blake, as contained in the third paragraph of the quoted portion of the majority opinion was prejudicial to the defendant. So, the question is presented whether the error went only to fixing punishment and did not influence the decision of the jury as to guilt or innocence of the defendant. The majority opinion relied on the case of McInturff v. State, 207 Tenn. 108, 338 S.W.2d 564 (1960), and Vowell v. State, 207 Tenn. 598, 341 S.W.2d 735 (1960). We have examined these cases and they can be distinguished upon the facts from the question presented in the instant case. Both of the cases involved liquor law violations. In *McInturff,* supra, the Court said, on pages 109–110 of 207 Tenn., page 565 of 338 S.W.2d:

"(1) As the record comes to this Court, it appears without controversy that one and one-half gallons of white corn whiskey was legally found in the possession of McInturff, and that at that time he admitted ownership thereof. It follows, therefore, that the verdict of guilty is supported by all the evidence."

Then, again, the Court said, on page 112 of 207 Tenn., page 565 of 338 S.W.2d:

"In the instant case, as in the Anderson case, the fact that McInturff possessed the whiskey is not controverted. However, unlike the Anderson case, the jury in this case fixed the maximum fine of $500. It is unreasonable to think that the evidence as to the reputation of McInturff being a bootlegger did not influence the jury in fixing this maximum sentence. The erroneous admission of this incompetent evidence can be rendered nonprejudicial, however, by modifying the judgment so as to fix the minimum fine of $100, rather than $500. So modified, that verdict, in so far as the fine is concerned, could not have been any more favorable to McInturff."

In Vowell v. State, supra, the Court said:

"The proof shows that Glenn Bowman and another deputy sheriff, while hiding at night in an alley watching the house of another person in Johnson City, saw defendant walking in the alley with a paper bag under his arm. Bowman said he saw 'whiskey in the bag sticking out,' and he jumped on defendant, threw him down to the ground, and the other officer took the bag, which contained eight pints of bottled in bond whiskey.

Defendant did not testify or offer any evidence to deny his guilt. The only evidence offered by him was the testimony of J. B. McMillan, which tended to show the arrest and search was unlawful."

In *Vowell*, supra, the Supreme Court, Felts, Justice, held that admission of incompetent evidence that defendant was a bootlegger prejudiced defendant to extent that he was fined $500, which would be reduced to $100 minimum authorized by statute.

In Anderson v. State, 165 Tenn. 569, on pages 570–571, 56 S.W.2d 731 (1933) the Court said:

"(1) Sheriff Climer testified that on a particular Sunday afternoon in May, 1931, as he was approaching the city of Lebanon in his automobile, he saw the plaintiff in error get out of his car, deliver a quart of whiskey to Frank Crawford, and receive pay therefor. This witness, as well as others introduced by the state, testified that plaintiff in error had the reputation of being a bootlegger. This testimony was excepted to by plaintiff in error, but the court admitted it solely for the purpose of being considered in determining the amount of punishment to be imposed, if the jury should find the plaintiff in error guilty. The plaintiff in error did not testify and did not put his character in issue. The trial court committed error in admitting this testimony, since it was incompetent for any purpose."

In our examination of the *Anderson* case, supra, we note the Court said this, on page 573, 56 S.W.2d on page 732:

"In State v. Lapage, 57 N.H. 245, 289, 24 Am.Rep. 69, the court, speaking through Chief Justice Cushing, said:

'It is a maxim of our law, that every man is presumed to be innocent until he is proved to be guilty. It is characteristic of the humanity of all the English speaking peoples, that you cannot blacken the character of a party who is on trial for an alleged crime. Prisoners ordinarily come before the court and the jury under manifest disadvantages. The very fact that a man is charged with a crime is sufficient to create in many minds a belief that he is guilty. It is quite inconsistent with that fairness of trial to which every man is entitled, that the jury should be prejudiced against him by any evidence except what relates to the issue; . . . .'"

The *Anderson* case, as did *McInturff* and *Vowell*, involve liquor law violations which, upon conviction, the jury could assess a fine of $500 and in its discretion,

the court could assess imprisonment in the workhouse. In each of the three mentioned cases, it appears that the prejudicial error was testimony that the defendant was a "known bootlegger", which was ruled prejudicial. In none of the cases was the fact that the defendant possessed the whiskey controverted. In *Anderson*, the jury fixed the minimum fine of $100 and in the other two cases the Court reduced the fine to the sum of $100 and in the three mentioned cases the admission of the incompetent evidence was ruled harmless. In *Anderson* and in *McInturff* the cases are not in accord with the right of the court to consider the incompetent evidence in the exercise of its discretion in imposing additional punishment, with which question we are not concerned in the instant case.

We note the majority opinion states "where the trial is error free so far as making out guilt is concerned and guilt is legally established prejudicial error effecting punishment alone is rendered harmless by reducing punishment to the minimum provided by law for the offense." Further, we note the majority opinion states, "His guilt was made out by the other proof and there was very little proof that he was not guilty." But, it was for the jury to consider all of the evidence going to the merits of the case and innocence or guilt of the accused goes to the merits of a criminal case. The Court is not permitted to poll the jurors to ascertain if incompetent evidence did, in fact, influence the decision of the jury. The test is, could it have influenced the decision of the jury?

As we have heretofore stated, both the majority and dissenting opinion of the Court of Criminal Appeals agree that the testimony of Dr. Blake, admitted over objection, was prejudicial to the accused, and we, after an examination of the whole record, are unable to say that the prejudicial error went only to the question of punishment.

The judgment of the Court of Criminal Appeals and the trial court are reversed and the case remanded for a new trial.

In the view we have of the matter, it will not be necessary to consider the remaining assignments.

DYER, C. J., and CHATTIN, HUMPHREYS and McCANLESS, JJ., concur.